E-filing

FILED

UNITED STATES DISTRICT COURT MAY 6 2008

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

--oOo--

CV 08 2335

DAVID COOPER,

    Petitioner,

    v.

ANTHONY HEDGPETH, Warden,
Kern Valley State Prison,

    Respondent.

_____/

No. _____

JF

# PETITION FOR WRIT OF HABEAS CORPUS

## AND

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

David McNeil Morse, #66923
Attorney at Law
595 Market Street
Suite 1350
San Francisco, CA 94105
(415) 974-1175

Attorney for Petitioner

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    ii

PETITION FOR WRIT OF HABEAS CORPUS . . . . . . . . . . . . . . . . . . . .    1

    FACTS ESTABLISHING THAT PETITIONER WAS DENIED HIS RIGHTS
    TO DUE PROCESS, AND FAIR TRIAL WHEN THE TRIAL COURT
    MISINSTRUCTED THE JURY ON THE TORTURE MURDER SPECIAL
    CIRCUMSTANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

VERIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . .    7

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

STATEMENT OF TRIAL EVIDENCE CONCERNING THE OFFENSE . . . . .    8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8

    THE STATE COURT VIOLATED PETITIONER'S FEDERAL
    CONSTITUTIONAL RIGHTS TO DUE PROCESS AND FAIR
    TRIAL BY MISINSTRUCTING THE JURY ON THE
    TORTURE MURDER SPECIAL CIRCUMSTANCE
    ALLEGATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8

    A.    Petitioner's contention in the state court proceeding . . . . . . .    8

    B.    The state court's adjudication of petitioner's case was
        contrary to, or involved unreasonable application of, clearly
        established federal law, as determined by the Supreme
        Court of the United States . . . . . . . . . . . . . . . . . . . . . . .    10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

1

## **TABLE OF AUTHORITIES**

**Cases**

Chapman v. California, 386 U.S. 18, 24 (1967) . . . . . . . . . . . . . . . . . . . 10, 12

In re Winship, 397 U.S. 358 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . 9

Lockyer v. Andrade, 538 U.S. 63, 71 (2003) . . . . . . . . . . . . . . . . . . . . 10

People v. Davenport, 41 Cal.3d 247, 271 (1985) . . . . . . . . . . . . . . . . . 8

People v. Hayes, 52 Cal.3d 577, 628 (1990) . . . . . . . . . . . . . . . . . . . . 9

People v. Mendoza, 18 Cal.4th 1114 (1998) . . . . . . . . . . . . . . . . . . . . 11

People v. Morales, 48 Cal.3d 527 (1989) . . . . . . . . . . . . . . . . . . . . . 12

People v. Petznick, 114 Cal.App.4th 663, 686-686 (2005) . . . . . . . . . . . . 8


**Statutes**

28 U.S.C. section 2254(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2254(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Penal Code section 187, subdivision (a) . . . . . . . . . . . . . . . . . . . . . 7

Penal Code section 190.2, subdivision (a)(18) . . . . . . . . . . . . . . . . . . 7

Penal Code section 206 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Penal Code section 245, subdivision (a)(1) . . . . . . . . . . . . . . . . . . . 7

Penal Code section 12022, subdivision (b)(1) . . . . . . . . . . . . . . . . . . 7

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

--oOo--

No. _____

DAVID COOPER,

    Petitioner,

    v.

ANTHONY HEDGPETH, Warden,
Kern Valley State Prison,

    Respondent.
_____/

## PETITION FOR WRIT OF HABEAS CORPUS

    Petitioner DAVID COOPER, by and through his counsel, respectfully petitions this court for a writ of habeas corpus, and by this verified petition sets forth the following facts and causes for the issuance of said writ:

I.

    Petitioner is unlawfully incarcerated and restrained of his liberty in violation of his fundamental rights under the Constitution and laws of the United States of America at Delano, California, by James Tilton, Secretary of the California Department of Corrections and Rehabilitation, and Anthony Hedgpeth, Warden of Kern Valley State Prison. Petitioner is therefore in custody within the meaning of 28 U.S.C. section 2254(a).

II.

    Petitioner is being held pursuant to a judgment pronounced by the San Francisco County Superior Court, the Honorable Jerome T. Benson, issued on April 30, 2004 in Action No. 186848, which requires petitioner to serve a sentence of life without the possibility of parole for the first degree murder of Michele Breault. Petitioner is not

- 1 -

1  serving any other sentence, and has no future sentences to serve after completion of the
2  sentence imposed by the above judgment.

3                                                III.

4      Petitioner at all times pleaded not guilty, and stood jury trial.  Petitioner testified
5  at trial.  His conviction was affirmed by the California Court of Appeal, First Appellate
6  District, Division Five, on direct appeal in Case No. A110881 in an unpublished opinion
7  issued on October 20, 2006.  (See Slip Opinion of the Court of Appeal in Case No.
8  A110881, a true copy of which is attached hereto and incorporated herein by reference
9  as Exhibit A to this petition.)  Petitioner's petition for review in the California Supreme
10 Court (Case No. S148366) was denied on February 7, 2007.

11                                               IV.

12     Throughout the superior court proceedings, petitioner was represented by Jasper
13 Monti, whose address is 360 Rich Street, Suite 206, San Francisco, CA 94107.  In his
14 direct appeal, petitioner was represented by David McNeil Morse, whose address is 595
15 Market Street, Suite 1350, San Francisco, CA 94105.

16                                               V.

17     Petitioner's sentence has been unlawfully and unconstitutionally imposed in
18 violation of his federal constitutional rights as guaranteed by the Fifth, Sixth and
19 Fourteenth Amendments to the United States Constitution because, in violation of
20 petitioner's above-listed federal constitutional rights to due process and fair trial, the trial
21 court erroneously instructed the jurors on an element of the torture murder special
22 circumstance allegation, allowing the allegation to be found true as to petitioner even if
23 they did not find that petitioner personally intended to kill and torture the victim.

24

25

26

                                            - 2 -

**FACTS ESTABLISHING THAT PETITIONER WAS DENIED HIS RIGHTS TO DUE PROCESS, AND FAIR TRIAL WHEN THE TRIAL COURT MISINSTRUCTED THE JURY ON THE TORTURE MURDER SPECIAL CIRCUMSTANCE.**

1. Petitioner was charged and tried in this case with his codefendant, Debra Soler. The evidence was in conflict concerning which of the defendants inflicted the torturous wounds on the victim, and the prosecutor repeatedly emphasized in argument that the jury need not be unanimous concerning which defendant was the perpetrator and which was the aider and abettor in order to find both defendants guilty of first degree murder. For example, the prosecutor stated "... we do not have direct evidence at that point about who did what, but we do know that Belinda German left the room at that point, and she was alive, Michele, and even David Cooper says that, and it was at that point that she was killed, and we don't have direct evidence of it, <u>but if you believe that one of them is the direct perpetrator and you believe that the other one ... aided and abetted, encouraged or instigated or facilitated and gave advice or did something to help the commission of the crime, then that person is guilty as an aider and abettor because that's what happened to her.</u>"  (XV RT 2590 [emphasis added].)[1]

2. With regard to the charged special circumstance, the court instructed the jury as follows:

> To find that the special circumstance referred to in these instructions as murder involving infliction of torture is true, each of the following facts must be proved:
>
> 1. The murder was intentional; and
>
> 2. A defendant intended to inflict extreme cruel physical pain an suffering upon a living human being for the purpose of revenge, persuasion or for any sadistic purpose.

---

[1] "CT" refers to the Clerk's Transcript on Appeal and "RT" refers to the Reporter's Transcript on Appeal in petitioner's direct appeal, A110881.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Awareness of pain by the deceased in not a necessary element of torture.

(CALJIC No. 8.81.18; 3 CT 356; 438; XV RT 2718.)

3. This instruction, which required that the jury find that "a" defendant inflicted torture rather than "the" defendant, erroneously allowed a finding that the special circumstance allegation was true based on a finding that Soler, and not petitioner, intended to kill and torture the victim. In order to sustain a true finding on the special circumstance, however, the prosecutor was required to prove beyond a reasonable doubt that petitioner personally intended to kill and torture the victim. Consequently, this instruction violated petitioner's constitutional rights to due process and fair trial.

VI.

Petitioner alleges that the adjudication of this claim in state court resulted in a decision that was contrary to, or involved unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, and/or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court proceedings.

VII.

By this reference, the accompanying memorandum of points and authorities and exhibits are made part of this petition as if fully set forth herein. Petitioner's claims under this petition will be based on the petition, the accompanying points and authorities, the exhibits attached hereto, all records, documents, and pleadings on file with the San Francisco County Superior Court in People v. David Cooper, No. 186848; with the California Court of Appeal, First Appellate District, in People v. David Cooper, No. A110881; and with the California Supreme Court in People v. David Cooper, No. S148366, and any further material to be developed at any future hearings which may be ordered.

- 4 -

1    WHEREFORE, petitioner respectfully requests that this court:

2         1.  Take judicial notice of the court records specified above;

3         2.  Order respondent to (a) furnish a complete copy of the Reporter's and

4    Clerk's Transcripts of the state court proceedings; (b) file an answer responsive to the

5    factual allegations of the petition; and (c) show cause why petitioner is not entitled to the

6    relief sought;

7         3.  Conduct a hearing at which proof may be offered concerning the

8    allegations in this petition or any affirmative defenses raised by respondent;

9         4.  After full consideration of the issues raised in this petition, grant the

10   petition, vacate the judgment and sentence imposed upon petitioner in San Francisco

11   County Superior Court Action No. 186848; and

12        5.  Grant petitioner such further relief as is appropriate in the interests of

13   justice.

14   Dated:  May 6, 2008                    Respectfully submitted,

15

16                                          DAVID McNEIL MORSE
17                                          Attorney for Petitioner

18

19

20

21

22

23

24

25

26

- 5 -

**VERIFICATION**

I, the undersigned, declare:

1. I am an attorney duly licensed to practice law in the State of California. I am the attorney for petitioner herein, who is confined at the Kern Valley State Prison in Delano, California.

2. I am authorized to file this petition for writ of <u>habeas</u> <u>corpus</u> on petitioner's behalf.

3. I make this verification because petitioner is incarcerated in a county different than that of my law office, and because these matters are more within my knowledge than his.

4. I have read the foregoing Petition for Writ of <u>Habeas</u> <u>Corpus</u> and believe that the matters stated therein are true.  On that basis, I allege that they are true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed May 6, 2008, at San Francisco, California.


DAVID McNEIL MORSE

## MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF THE CASE

On February 21, 2003, an amended information was filed in the court below charging petitioner DAVID COOPER and codefendant Debra Soler with murder (count 1), in violation of Penal Code[2] section 187, torture (count 2), in violation of section 206, and assault with a deadly weapon (count 3), in violation of section 245, subdivision (a)(1). (1 CT 42-45.) As to count 1, it was further alleged that the murder was intentional and involved the infliction of torture, within the meaning of section 190.2, subdivision (a)(18). (1 CT 43.) Additionally, as to counts 1 and 2, it was alleged that petitioner personally used a deadly weapon, to wit: a knife, within the meaning of section 12022, subdivision (b)(1). (1 CT 44-45.)

On February 17, 2004, jury trial began. (1 CT 195.) On March 24, 2004, the court granted the prosecutor's motion to strike the deadly weapon use allegations as to counts 1 and 2, and to dismiss count 3. (2 CT 283.) On April 2, 2004, the jury found petitioner guilty of first degree murder on count 1, and found the special circumstance allegation to be true. (2 CT 279.) The jury also found petitioner guilty of count 2.

On April 30, 2004, the court sentenced petitioner to life without possibility of parole on count 1. Sentence on count 2 was stayed pursuant to section 654. (2 CT 464.) On the same day, a timely notice of appeal was filed, giving rise to petitioner's direct appeal. (2 CT 466.) On October 20, 2006, the Court of Appeal issued an opinion affirming the conviction. On February 7, 2007, petitioner's petition for review in the California Supreme Court (Case No. S148366) was denied.

---

[2]All further statutory references are to the California Penal Code unless otherwise indicated.

- 7 -

1    **STATEMENT OF TRIAL EVIDENCE CONCERNING THE OFFENSE**

2    For purposes of this memorandum only, petitioner adopts the statement of facts

3    contained within the opinion of the Court of Appeal.  (Exhibit A, pp. 1-4.)

4    **ARGUMENT**

5    **THE STATE COURT VIOLATED PETITIONER'S FEDERAL
    CONSTITUTIONAL RIGHTS TO DUE PROCESS AND FAIR TRIAL
6    BY MISINSTRUCTING THE JURY ON THE TORTURE MURDER
    SPECIAL CIRCUMSTANCE ALLEGATION**

7    **A.    Petitioner's contention in the state court proceeding**

8    The torture-murder special circumstance embodied in section 190.2, subdivision

9    (a)(18), authorizes death or life imprisonment without parole where the defendant is

10   convicted of first degree murder and where "[t]he murder was intentional and involved

11   the infliction of torture."  The California Supreme Court has held that "[p]roof of a

12   murder committed under the torture-murder special circumstance therefore requires proof

13   of first degree murder, (§ 190.2, subd. (a)), [and] proof <u>the defendant</u> intended to kill and

14   to torture the victim (§ 190.2, subd. (a)(18))...." <u>People v. Davenport</u>, 41 Cal.3d 247,

15   271 (1985) [emphasis added].   In other words, the special circumstance cannot be

16   imposed on the basis of vicarious liability, but requires that the defendant intend to kill

17   the victim and be the actual perpetrator of the torture of the victim.  Where, as here, a

18   court instructs the jury that it need only find that "a" defendant rather than "the"

19   defendant inflicted torture, error of constitutional magnitude occurs requiring that the

20   special circumstance finding be set aside unless the prosecution can establish that the

21   error is harmless beyond a reasonable doubt. <u>People v. Petznick</u>, 114 Cal.App.4th 663,

22   686-686 (2005).

23   In <u>Petznick</u>, the defendant was convicted of first degree murder with torture-

24   murder and robbery-murder special circumstances as one of four men who were involved

25   in a robbery in which the victim was bound, gagged, bludgeoned, and stabbed to death.

26

- 8 -

1   The trial court gave the same version of CALJIC No. 8.81.18 given in this case, which
2   referred to "a" defendant rather than "the" defendant. The court found that the erroneous
3   instruction violated the defendant's right to due process and trial by jury. Even though
4   the defendant in Petznick was tried alone, the jury heard evidence concerning the other
5   participants, and the court found that "the jury could easily have understood a defendant
6   as referring to any one of the four participants." Id., at p. 686 [emphasis in original].

7       Where a jury is erroneously instructed on an element of an offense, the error
8   violates a defendant's federal constitutional right to fair trial and reversal of his
9   convictions for the offense is required unless the prosecution can establish that the error
10  was harmless beyond a reasonable doubt. People v. Hayes, 52 Cal.3d 577, 628 (1990);
11  see, also, In re Winship, 397 U.S. 358 (1970). The same is true of a special
12  circumstance allegation. Applying this rule in Petznick, the court set aside the true
13  finding on the torture-murder special circumstance, stating "The error is prejudicial
14  because we cannot say, beyond a reasonable doubt, that it did not contribute to the jury's
15  finding." The court determined that nothing in the prosecutor's closing argument served
16  to cure the error, nor was the evidence that the defendant intended to torture the victim
17  so overwhelming as to convince the court that the error was harmless.

18      In petitioner's case, it is even more clear than in Petznick that the misinstruction
19  on the torture-murder special circumstance was prejudicial and required reversal. First
20  of all, petitioner was not tried alone, but was tried with a codefendant. Secondly, the
21  evidence was in conflict concerning which of the defendants inflicted the torturous
22  wounds on the victim, and the prosecutor repeatedly emphasized in argument that the jury
23  need not be unanimous concerning which defendant was the perpetrator and which was
24  the aider and abettor in order to find both defendants guilty of murder. Finally, the
25  verdict form offered no clarification concerning whether the special circumstance finding
26  was intended to be based on personal or vicarious liability, stating only, "The jury finds

- 9 -

the allegation under section 190.2(a)(18) of the Penal Code, that the murder of Michelle Breault was commited [sic] by David Cooper, and that the murder was intentional and involved the infliction of torture, to be true."

In ruling on petitioner's contention, the state court acknowledged that the misinstruction presented a federal constitutional issue, but concluded, beyond a reasonable doubt, that the erroneous instruction did not contribute to the jury's true finding on the special circumstance. Chapman v. California, 386 U.S. 18, 24 (1967)

**B.    The state court's adjudication of petitioner's case was contrary to, or involved unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States**

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), a federal habeas court may grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court only if the state court adjudication resulted in a decision that (1) was contrary to clearly established federal law as determined by the Supreme Court of the United States, or (2) involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States, or (3) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Id. § 2254(d); see also Lockyer v. Andrade, 538 U.S. 63, 71 (2003).

Here, the state court applied the rules of Winship and Chapman to the facts of the case in an objectively unreasonable manner. In addition, the state court also based its decision on an unreasonable determination of the facts in light of the evidence presented at the trial.

The state court in its opinion reasons that "[h]aving found both the crime of torture and the torture murder special circumstance to have been proven beyond a reasonable doubt, the jury necessarily found appellant to have harbored the same specific intent

- 10 -

1  requisite for each. (Exhibit A at p. 8 [emphasis added].)  The court also states "The jury

2  found Michelle was both murdered and tortured by appellant." (Ibid.)  Considering the

3  instructions given in this case, these are misstatements of both law and fact.

4         The court omits from its discussion any consideration of the fact that the jury was

5  instructed on aiding and abetting in this joint trial.  In this regard, the jury was instructed

6  that "principals" in the commission of a crime include those who aid and abet the

7  commission of the crime.  Pen. Code § 31; CALJIC No. 3.00.  The court's conclusion

8  that, in order to find petitioner guilty of torture, the jury necessarily had to find that he

9  harbored the requisite specific intent for a perpetrator of the crime, is incorrect.  There

10 was no requirement that petitioner be found to have personally intended to inflict torture

11 to be guilty of the substantive crime as an aider and abettor.  Instead, the jury was

12 correctly instructed that, to aid and abet in the crime of torture, a defendant must act with

13 knowledge of the unlawful purpose of the perpetrator, and with the intent or purpose of

14 committing or encouraging or facilitating the commission of the crime.  This is not a

15 requirement that the aider and abettor have the same mental state as the perpetrator.  As

16 the California Supreme Court stated in People v. Mendoza, 18 Cal.4th 1114 (1998), for

17 example:

18         The mental state necessary for conviction as an aider and abettor, however,
           is different from the mental state necessary for conviction as the actual
19         perpetrator.  The actual perpetrator must have whatever mental state is
           required for each crime charged ...  An aider and abettor, on the other
20         hand, must "act with knowledge of the criminal purpose of the perpetrator
           and with an intent or purpose either of committing, or of encouraging or
21         facilitating commission of, the offense."  (People v. Beeman (1984) 35
           Cal.3d 547, 560, original italics.)  The jury must find "the intent to
22         encourage and bring about conduct that is criminal, not the specific intent
           that is an element of the target offense ...."  (Citations.)

23
   (Id., at pp. 1122-1123.)
24
          In view of these instructions, the state court is also incorrect to state that "The jury
25
   found Michelle was both murdered and tortured by appellant," at least to the extent that
26

                                       - 11 -

1    it implies that the jury found petitioner guilty of both crimes as a direct perpetrator.  As

2    with the substantive crime of torture, the instructions on the murder count also allowed

3    for a finding of guilt on an aiding and abetting theory.  Consequently, the fact that

4    petitioner was convicted of both the murder and the torture counts does not resolve the

5    issue raised by petitioner concerning the torture murder special circumstance instruction.

6         Finally, the case of People v. Morales, 48 Cal.3d 527 (1989), cited by the state

7    court to support its harmless error finding, is distinguishable from petitioner's case

8    because it involved a single defendant.  In Morales, the court found that the jury's

9    implied finding of torture murder rendered harmless any instructional error as to the

10   torture murder special circumstance.  But there was no possible issue of vicarious liability

11   in Morales since he was tried alone on the theory that he was the sole perpetrator.

12   Consequently, Morales offers no support for the court's finding of harmless error in

13   petitioner's case.

14        In view of the ambiguity in both the argument and the jury instructions regarding

15   whether the jury was required to find that petitioner personally intended to kill and torture

16   the victim, it cannot be concluded, beyond a reasonable doubt, that the erroneous

17   instruction did not contribute to the jury's finding.  (Chapman v. California, supra, 386

18   U.S. at p. 25.)  Consequently, the state court based its decision on an unreasonable

19   application of Chapman as well as an unreasonable determination of the facts.

20   Consequently, the writ should issue.

21

22

23

24

25

26

- 12 -

1

## **CONCLUSION**

2    For the foregoing reasons, petitioner requests that the court grant the relief

3  requested in his Petition for Writ of <u>Habeas Corpus</u>.

4  Dated: May 6, 2008                              Respectfully submitted,

5

6                                           <u>DAVID McNEIL MORSE</u>

7                                           Attorney for Petitioner

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

- 13 -

**EXHIBIT A**

Not Reported in Cal.Rptr.3d, 2006 WL 2988947 (Cal.App. 1 Dist.)
**Not Officially Published**
**(Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
<u>Briefs and Other Related Documents</u>

Only the Westlaw citation is currently available.

California Rules of Court, rule 8.1115, restricts citation of unpublished opinions in California courts.

Court of Appeal, First District, Division 5, California.
The PEOPLE, Plaintiff and Respondent,
v.
David COOPER, Defendant and Appellant.
No. A110881.
(San Francisco County Super. Ct. No. 186848).
Oct. 20, 2006.

Office of the Attorney General, San Francisco, CA, for Plaintiff and Respondent.

First District Appellate Project, David McNeil Morse, San Francisco, CA, for Defendant and Appellant.

BRUINIERS, J.[FN*]
[FN*] Judge of the Superior Court of Contra Costa County, assigned by the Chief Justice pursuant to <u>article VI, section 6 of the California Constitution</u>.
    *1 Appellant David Cooper was convicted after a jury trial of the crime of first degree murder, with the special circumstance of torture (<u>Pen.Code, §§ 187</u>, <u>190.2</u>, subd. (a)(18)).[FN1] He was also separately convicted of the crime of torture. (§ 206.) Appellant was sentenced to life without possibility of parole.

[FN1.] All further statutory references are to the Penal Code unless otherwise noted.
    He contends: 1) the trial court abused its discretion in denying severance of his trial from that of his codefendant, Debra Soler, and 2) the jury instruction relating to the torture murder special circumstance was prejudicially erroneous. We reject both contentions and affirm.

I. *FACTS AND PROCEDURAL HISTORY*
    This appeal arises from the murder of Michelle Breault (Michelle) at the Stanford Hotel in San Francisco on the evening of July 16, 2001. While appellant does not challenge the sufficiency of the evidence, we summarize the facts.

    Michelle, who was described by a social worker as innocent, naïve, and depressed, had recently moved to San Francisco from New Mexico with her boyfriend. They were homeless and living in Golden Gate Park, until Michelle's boyfriend was seriously injured in a fight and hospitalized. About July 10, 2001, Michelle obtained a housing voucher from a veterans aid group and moved into room 422 at the Stanford Hotel at 250 Kearney Street, San Francisco.

    Debra Soler (Soler) lived in room 420. Soler had been living in the hotel for about six years, and did minor maintenance jobs around the hotel. Soler's boyfriend, appellant

1

David Cooper (Cooper), surreptitiously lived with Soler in room 420, because he had previously been banned from the hotel. Soler's friend Belinda German (German) also lived nearby, in room 416.

On the evening of July 16, 2001, at about 8:45 p.m., Michelle confronted the hotel clerk, Ms. Pushpa Patel, about the need to fix the toilet on the fourth floor. Michelle was loud and angry, and appeared to be under the influence of alcohol.[FN2]

FN2. Her post-mortem blood alcohol level was .21 per cent by volume, and was probably closer to .28 per cent at the time of death.

Around 10:00 p.m., Michelle knocked on the door of the room occupied by Soler and her boyfriend Cooper. Also in the room was Soler's friend, German. Soler, German, and Cooper had been drinking beer, and German described the mood inside the room as jovial. Michelle was obviously intoxicated, and asked to come in. She sat on the bed in the room and talked about her injured boyfriend.

Cooper was apparently suspicious of Michelle, and began questioning her about whether she was "a cop or a narc." Cooper demanded to see Michelle's identification. Michelle did not have her wallet with her, but she gave her key to German to go retrieve it. Michelle then took her identification out of the wallet and showed it to Soler, but this did not seem to satisfy him. Soler called the hospital to confirm Michelle's story about her boyfriend.

Cooper again demanded angrily to know whether Michelle was "a cop or a narc." Michelle hit Cooper in the head with a glass, and Cooper pushed Michelle away. Soler grabbed Michelle by the hair, and began shaking her and punching her in the face with her fists. Michelle fell to the floor, and Soler "stomped" on her several times until Cooper told her to stop. Soler then grabbed a hammer and attempted to strike Michelle repeatedly in the head. Cooper yelled to German to stop Soler, so German grabbed the hammer and hid it in the bathroom.

*2 Soler went into the bathroom and returned with a plastic garbage bag and put it around Michelle's neck, saying that Michelle was a "bitch." Michelle struggled and was able to get the bag off her head. Soler put another bag on Michelle's head, but Michelle removed that one as well.

Soler got another bag and asked Cooper to hold Michelle's feet. Cooper said he would have to knock Michelle out. German left the room at that point to go to the hallway bathroom. Five minutes later, she saw Cooper again in the hallway, with blood on his hands. He told German that "we're going to have to kill her now" because this was Cooper's "third strike."

At around this same time, Rita Tonucci and her boyfriend Adam Chedister were in the room directly below Soler's, and Adam heard loud noises of banging and what sounded like a woman being choked and hit, while a man threatened to kill her. Tonucci banged on the ceiling with a broom, and the sounds finally stopped after about 20 minutes. Tonucci and her boyfriend prayed that what they had heard was not a murder, although they feared that it was.

German went to the room of her friend Jimmy Murray and told him that someone was being beaten in Soler's room. German went back to Soler's room. Soler told German that Cooper had left. There was something on the floor wrapped in a blanket-apparently Michelle.

German returned to Murray's room and said something had happened to a woman upstairs. Murray suggested they should go out to eat, so they went to a restaurant and did not return until early the next morning about 1:30 a.m.

Sometime after 2:00 a.m., German went to Michelle's room and saw Michelle's body inside. German did not want to report the presence of the body herself, so she pulled a fire alarm, which ultimately led to the discovery of Michelle's body. The body was naked from the waist up, with the pants unzipped. There was a syringe in her pocket and some injection sites on her arm, although no drugs were found in the toxicological examination, leading the coroner to believe the evidence had been staged to make it appear that she was a drug abuser. There were also blood smears and drag marks in the room, and some letters written on the wall.

Michelle's body had suffered multiple blunt and sharp trauma, including many wounds to her head and face consistent with blows from a hammer, and stab wounds in her abdomen, all of which would have inflicted extreme pain. There was relatively little blood, and no spattered blood, in the room, suggesting that Michelle had been killed elsewhere and dragged to her room.

German did not at first tell anyone what she knew about the murder. Later, she went to Soler's room and saw Cooper, who talked about the murder and killing the victim. German said she did not want to know more, and Cooper warned her not to talk. German also saw Soler wearing a halter top, and noticed bruises on her arm, shaped like fingers. Soler told German, "the girl fought."

*3 On July 19, 2001 German told Pushpa Patel what she knew about the July 16 murder, and Patel called the police. The police obtained a search warrant and searched Soler's room, finding a hammer, knives, a dagger, and two items from Michelle's room, a suitcase and a radio. There were also blood splatters and pools of blood on some furniture. There was no visible blood on the top of the rug, but there was a pool of blood underneath it. There were traces of blood on the hammer and a knife. DNA testing matched the blood on the hammer and furniture to Michelle.

Soler gave a statement to the police in which she denied knowing the victim or participating in any murder.

On July 24, 2001, Cooper and Soler were jointly charged by felony complaint with the murder of Michelle Breault. Both were held to answer on August 22, 2002. An information charging the murder and the torture special circumstance was filed on September 6, 2002. An amended information was filed on February 21, 2003. On June 13, 2003, codefendant Soler filed a motion to sever her case from that of appellant.[FN3] Appellant joined in that motion, which was denied after hearing on June 26, 2003. Trial commenced with pretrial motions on February 11, 2004, with jury selection beginning on February 17, 2004. On February 19, 2004, appellant presented his own motion to sever on the basis of "antagonistic defenses." That motion was denied on February 25, 2004.

FN3. The pleading was captioned "MOTION IN LIMINE TO ADMIT THIRD PARTY CULPABILITY EVIDENCE AND/OR TO SEVER DEFENDANTS."

Cooper testified in his own defense, blaming Soler for the murder. He claimed that Soler had attacked Michelle after Michelle had hit him in the head with a beer bottle, and the two women fought, while Cooper only watched. Soler hit Michelle in the head with a hammer, and Cooper yelled to German to stop Soler. Soler tried to put a bag over Michelle's head. Cooper left the room and talked with German, telling German that Soler might be killing Michelle as they were talking. Cooper returned to the room to find Michelle dead, and blood all over. Cooper insisted that he had nothing to do with killing Michelle. However, he admitted he helped Soler move the body and stage a murder

3

scene in Michelle's room. Cooper testified that he was on parole at the time of the murder. It was stipulated that he had previously been convicted of domestic violence. He denied threatening Soler or discussing his criminal past with her.

Soler testified, swearing that Cooper was the one who killed Michelle, while Soler was in the bathroom after Michelle hit Cooper with a bottle. Soler said that she had grabbed Michelle by the hair to drag her out of the apartment, and that Cooper had started hitting her, knocking her down. She alleged that it was Cooper who started beating Michelle and trying to put a bag over her head. According to Soler, she heard Michelle screaming for help while Soler was in the bathroom for about 20 minutes. Cooper told Soler that he had gotten "carried away" and killed Michelle by "sticking a knife in her," and that he did not want to go back to prison. Soler claimed she did not aid in the torture or murder, and only helped to clean up the blood.

*4 On April 2, 2004 both Cooper and Soler were convicted by the jury of first degree murder, with the torture special circumstance found to be true, and both were convicted of the separate crime of torture. (§§ 187, 190.2, subd. (a)(18), 206.)

Appellant was sentenced to life without possibility of parole. The trial court granted Soler's motion for new trial.[FN4]

FN4. The People appealed the grant of Soler's new trial motion, and that appeal is also pending before this court (case No. A109295). The Attorney General has requested that we take judicial notice of documents filed in that appeal, particularly as they relate to the issue of severance, and no party has objected. We grant the request.

II. *DISCUSSION*

A. DENIAL OF THE MOTION FOR SEVERANCE WAS NOT AN ABUSE OF DISCRETION.
    Appellant Cooper first contends that the trial court abused its discretion in denying his motion to sever his trial from that of his codefendant Soler. We find no abuse of discretion.

Severance is governed by section 1098.[FN5] Under that statute, "a trial court must order a joint trial as the 'rule' and may order separate trials only as an 'exception.' (5 Witkin & Epstein, Cal.Criminal Law (2d ed. 1989) Trial, § 2518, p. 3021.)" ( *People v. Alvarez* (1996) 14 Cal.4th 155, 190, italics omitted.) The trial court is granted the authority to determine whether severance is warranted, and its decision will be reversed on appeal only if the court abused its discretion. ( *Id.* at p. 189.) " '[D]iscretion is abused only if the court exceeds the bounds of reason, all of the circumstances being considered. [Citation.]' " ( *People v. Green* (1995) 34 Cal.App.4th 165, 182-183.) Even if a trial court abuses its discretion in failing to grant severance, reversal is required only upon a showing that, to a reasonable probability, the defendant would have received a more favorable result in a separate trial. ( *People v. Keenan* (1988) 46 Cal.3d 478, 502-503 ( *Keenan* ).)

FN5. Section 1098 states, in part, "When two or more defendants are jointly charged with any public offense ... they must be tried jointly, unless the court order separate trials."
    The only other basis for reversal after trial where a severance motion has been denied is if it appears that, because of the joint trial, a gross unfairness occurred such as to deprive the defendant of a fair trial or due process of law. ( *People v. Boyde* (1988) 46 Cal.3d 212, 233 ( *Boyde* ).)

Joint trials are favored because they "promote [economy and] efficiency" and " 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.' " (

4

_Zafiro v. United States_ (1993) 506 U.S. 534, 537 ( _Zafiro_ ).) As appellant acknowledges, the Legislature has "expressed a preference for joint trials." ( _Boyde, supra,_ 46 Cal.3d at p. 231.) In light of the legislative preference for joinder, separate trials are usually ordered in circumstances where the admission of an incriminating confession of a codefendant which cannot be adequately redacted, or where there may be prejudicial association with codefendants, likely confusion resulting from evidence on multiple counts, conflicting defenses, or the possibility that a codefendant would give exonerating testimony at a separate trial. ( _People v. Box_ (2000) 23 Cal.4th 1153, 1195 ( _Box_ ).)

In deciding whether the exception applies, the trial court is required to decide whether the realistic benefits from a consolidated trial are outweighed by the likelihood of substantial prejudice to the defendant. ( _Keenan, supra,_ 46 Cal.3d at p. 500 .) "The balancing process is a 'highly individualized exercise' [citation], and the propriety of a trial court ruling depends on the facts as they appeared when the motion was decided. [Citation.]" ( _Id._ at p. 501, italics omitted.)

*5 Appellant here argues that the trial court was aware, by virtue of Soler's June 13, 2003 motion, that his codefendant intended to present evidence at trial that appellant was violent and abusive to women, and that appellant was solely responsible for Michelle's murder. The trial court rejected, however, Soler's request to introduce evidence that Cooper had repeatedly attacked his previous girlfriend, Deborah Edgar, while they lived together at the Stanford Hotel, on the basis of its potential for prejudice to Cooper's defense.

Appellant contends that the court was still required to sever his case from Soler's because it was evident that the two had "antagonistic defenses," and that his codefendant intended to implicate him in the murder. Appellant relies largely upon federal authorities applying Federal Rules of Criminal Procedure, rule 14, including a decision of the Ninth Circuit in _U.S. v. Tootick_ (9th Cir.1991) 952 F.2d 1078 ( _Tootick_ ), reversing convictions upon finding that the defendants had demonstrated clear and manifest prejudice, and that on the record before it "[t]he jury could not have been able to assess the guilt or innocence of the defendants on an individual and independent basis." ( _Id._ at p. 1083; see also _U.S. v. Rucker_ (11th Cir.1990) 915 F.2d 1511; _United States v. Romanello_ (5th Cir.1984) 726 F.2d 173.) The federal rule permits severance on a showing of prejudice, and the Ninth Circuit in _Tootick,_ addressing what it considered to be a case of first impression, suggested that a finding of mutually exclusive defenses requires severance under Federal Rules of Criminal Procedure, rule 14. ( _Id._ at pp. 1081-1082.) _Tootick_ premised its holding in large part upon the "second prosecutor" theory, with each codefendant's counsel required to do everything possible to convict the other defendant under such circumstances.

In the first instance, the " 'decisions of the lower federal courts on federal questions are merely persuasive. [Citations.]' " ( _People v. Wallace_ (1992) 9 Cal.App.4th 1515, 1519, fn. 3 ( _Wallace_ ).) Our Fourth District in _Wallace_ expressly declined to follow _Tootick_ and _Rucker_ as " 'too rigid in circumscribing the discretion of the trial court.' " ( _Ibid._ ) We agree.

Moreover, the United States Supreme Court in its subsequent decision in _Zafiro, supra,_ held that mutually antagonistic defenses are not prejudicial per se, and that Federal Rules of Criminal Procedure, rule 14 does not require severance, even if prejudice is shown. ( _Zafiro, supra,_ 506 U.S. at pp. 538-539.) The court determined that a federal trial court "should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." ( _Ibid._ )

In *Zafiro,* as here, appellants did not articulate any specific instances of prejudice, but rather contended that the very nature of their defenses, without more, prejudiced them on the theory is that "when two defendants both claim they are innocent and each accuses the other of the crime, a jury will conclude (1) that both defendants are lying and convict them both on that basis, or (2) that at least one of the two must be guilty without regard to whether the Government has proved its case beyond a reasonable doubt ." ( *Zafiro, supra,* 506 U.S. at p. 540.) The Supreme Court rejected these contentions, noting that "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials," and that "[w]hile '[a]n important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence,' [citation] a fair trial does not include the right to exclude relevant and competent evidence. A defendant normally would not be entitled to exclude the testimony of a former codefendant if the district court did sever their trials, and we see no reason why relevant and competent testimony would be prejudicial merely because the witness is also a codefendant." ( *Ibid.,* italics omitted.) Further, *Tootick* was subsequently limited to its facts by the Ninth Circuit after *Zafiro.* ( *U.S. v. Buena-Lopez* (9th Cir.1993) 987 F.2d 657, 660-661; *U.S. v. Balter* (3rd Cir.1996) 91 F.3d 427, 434.)

*\*6 Our own Supreme Court has also consistently held that, contrary to appellant's argument, severance is not required merely because it is anticipated defendants will attempt to shift responsibility to each other. ( *Box, supra,* 23 Cal.4th at pp. 1196-1197; *Alvarez, supra,* 14 Cal.4th at p. 190; *People v. Cummings* (1993) 4 Cal.4th 1233, 1287 ( *Cummings* ); *People v. Hardy* (1992) 2 Cal.4th 86.) In *Box,* as in *Cummings,* the defense positions were antagonistic because the circumstances of the victims deaths, and the identity of the killer, were in dispute. As here, " 'That each was involved in the incident was undisputed, however, and the prosecution had offered evidence sufficient to support verdicts convicting both defendants.... [T]his was not a case in which only one defendant could be guilty.... Here the prosecution theory was that both defendants participated in, and were guilty of, the murder[s].' ( *Cummings, supra,* at p. 1287.) The jury was presented with a straightforward decision regarding both defendants' relative culpability; its verdict finding each defendant guilty as charged reveals it accepted neither defense." ( *Box, supra,* at p. 1197.)

More recently, our Supreme Court unanimously declined to reverse capital murder convictions where severance had been denied on claims of antagonistic defenses. ( *People v. Coffman and Marlow* (2004) 34 Cal.4th 1 ( *Coffman* ).) In *Coffman* the defendants were tried jointly for the murder and other crimes. Each of the defendants contended the other was the more culpable party. As in the present case, Marlow's girlfriend, Coffman, testified that she had not directly participated in the killing, and that her presence and limited participation was due to fear of Marlow. Her defense focused on depiction of Marlow as a vicious and violent man. ( *Id.* at p. 42.) Finding no abuse of discretion in denying severance, the court held that " 'Although there was some evidence before the trial court that defendants would present different and possibly conflicting defenses, a joint trial under such conditions is not necessarily unfair. [Citation.] "Although several California decisions have stated that the existence of conflicting defenses may compel severance of codefendants' trials, *none has found an abuse of discretion or reversed a conviction on this basis.*" [Citation.] ... "Rather, to obtain severance on the ground of conflicting defenses, it must be demonstrated that the conflict is so prejudicial that [the] defenses are irreconcilable, and the jury will unjustifiably infer that this conflict *alone* demonstrates that both are guilty." ' [Citation.] When, however, there exists sufficient independent evidence against the moving defendant, it is not the conflict alone that demonstrates his or her guilt, and antagonistic defenses do not compel severance. [Citation .]" ( *Coffman, supra,* at p. 41, italics in original.)

6

If the fact of conflicting or antagonistic defenses alone required separate trials, it would negate the legislative preference for joint trials, and separate trials would appear to be mandatory in almost every case. "When defendants are charged with having committed 'common crimes involving common events and victims,' as here, the court is presented with a ' "classic case" ' for a joint trial." ( *Coffman, supra,* 34 Cal.4th at p. 40; *People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 998; *Keenan, supra,* 46 Cal.3d at pp. 499-500.)

*7 In the case before us, there was more than sufficient independent evidence of appellant's guilt in the testimony of eye witness German, and that of Rita Tonucci and her boyfriend Adam Chedister, who were in the room directly below the room where appellant lived, heard loud noises of banging and a woman being choked and hit, while a man, who could only have been appellant in light of the other evidence, threatened to kill her.

The charges against appellant Cooper and his codefendant Soler arose out of the same incident of torture and murder, with testimony required from the same witnesses. The independent evidence established that both defendants participated in the killing. This was not a case where the jury would necessarily be unable to assess the guilt or innocence of the defendants on an individual and independent basis, nor was it a case in which only one defendant could be guilty, since the prosecution theory was that both defendants participated in, and were guilty of, the murder. ( *Cummings, supra,* 4 Cal.4th at p. 1287.) The jury was instructed that it was required to determine the guilt or innocence of each defendant separately, both as to guilt and as to the torture special circumstance. (CALJIC Nos. 17.00 & 8.80.1.) A jury is presumed to have understood and followed its instructions. ( *People v. Mills* (1991) 1 Cal.App.4th 898, 918; *People v. Yoder* (1979) 100 Cal.App.3d 333, 338.) Here the jury was required to decide the relative culpability of each of the defendants, and the verdicts finding each defendant guilty reflects that it accepted neither defense. ( *Box, supra,* 23 Cal.4th at pp. 1196-1197.)

We find no abuse of discretion in the refusal to grant separate trials. Further appellant has, in any event, failed to establish any reasonable probability of a more favorable outcome had severance been granted. Neither do we find any "gross unfairness" depriving appellant of a fair trial.[FN6]

FN6. For the same reasons, we find no violation of appellant's constitutional rights as a result of the denial of the severance motion. (See *Coffman, supra,* 34 Cal.4th at p. 44 [rejecting constitutional claim arising out of denial of severance motion].)

## B. THE JURY INSTRUCTIONS REGARDING THE TORTURE MURDER SPECIAL CIRCUMSTANCES WERE NOT PREJUDICIALLY ERRONEOUS.

Appellant also contends the jury instruction given relating to the torture special circumstance (CALJIC No. 8.81.18) was prejudicially erroneous, because the instruction as given permitted the jury to find the special circumstance charged against him to be true even if he did not personally harbor the specific intent required for that finding. We reject this contention, finding that when the jury instructions, verdict form, and evidence are properly considered as a whole, there was no prejudicial error.

In *People v. Davenport* (1985) 41 Cal.3d 247, 271, our Supreme Court held that the torture murder special circumstance specified in section 190.2, subd. (a)(18) [FN7] requires proof of an intent to inflict extreme and cruel pain. In accordance with this holding, the jury in the present case was instructed, using the language of then standard instruction, CALJIC No. 8.81.18, that the jury must find that " *a* defendant intended to inflict extreme, cruel physical pain...." (Italic added.) [FN8] Appellant challenges the use of the indefinite article "a" in the instruction. Since there were two defendants on trial, he

contends that, under the instruction as given, he might have been found guilty of the torture murder special circumstance even though he did not personally have the required intent to inflict extreme pain, if the jury believed that his codefendant harbored such intent.

FN7. This special circumstance applies if the jury finds the following facts to be true: "The murder was intentional and involved the infliction of torture." (§ 190.2, subd. (a)(18).)

FN8. This instruction was revised in 2005, after the 2004 trial in this matter, to eliminate the use of the word "a" before the word "defendant." The revised instruction now requires the jury to find: "2. *The* defendant intended to inflict extreme cruel physical pain." (CALJIC No. 8.81.18 (2005 Rev.), italics added.)

   *8 In *People v. Petznick* (2003) 114 Cal.App.4th 663 ( *Petznick* ), cited by appellant, the Sixth District held that it was error to give an instruction similar to former CALJIC No. 8.81.18 where the jury could have understood the phrase "a defendant" to refer to any of the four participants in a homicide in which three special circumstances, including torture, were alleged. ( *Petznick, supra,* at pp. 685-687.) In that case, the court also found that use of the indefinite article was emphasized by the trial court both orally and in writing, that the jury demonstrated confusion on the issue of intent by questions concerning a conspiracy instruction, and that the error was prejudicial because it was not cured by argument or other instruction. ( *Ibid.* )

   In evaluating claims of instructional error, we determine how the challenged instruction would be understood by reasonable jurors, and review the instructions as a whole to assess whether the entire charge delivered a correct interpretation of the law. ( *People v. Cox* (1991) 53 Cal.3d 618, 667.) Here, the instructions viewed as a whole differ from those in *Petznick* in crucial respects. In the present case, unlike *Petznick*, appellant was also found guilty of the independent crime of torture, which definitionally requires a finding of an intent to inflict extreme pain. Our Supreme Court has recently confirmed that the intent required for the torture murder special circumstance is the same intent required for the crime of torture. ( *People v. Elliot* (2005) 37 Cal.4th 453, 479.) As to this required intent for the crime of torture, the jury was instructed, pursuant to the standard instruction, CALJIC No. 9.90, that the jury must find a specific intent as follows: "The person inflicting the injury did so with the specific intent to cause cruel or extreme pain and suffering...." In this connection, the jury also received CALJIC instruction 3.31, on the required concurrence of the act and the requisite specific intent. That the jury understood that the same specific intent was required for verdicts on both the torture charge and the special circumstance finding is reflected in a question submitted by the jurors, asking if a true finding on the special circumstance eliminated the need for a finding on the torture charge. Having found both the crime of torture and the torture murder special circumstance to have been proven beyond a reasonable doubt, the jury necessarily found appellant to have harbored the same specific intent requisite for each. Further, the verdict form for the special circumstance in the present case specifically required the jury to find that "the murder of Michelle Breault was committed by David Cooper, and that the murder was intentional and involved the infliction of torture."

   In the present case there was no reasonable possibility that the torture murder special circumstance could apply to appellant unless he was found to have intended to inflict extreme pain on the victim. The jury found Michelle was both murdered and tortured by appellant. Appellant's defense was not any lack of intent to inflict pain, but rather that he was simply not involved at all in either the torture or murder, contentions necessarily rejected by the jury in its verdict.

   *9 In light of these facts, we find any error in including the word "a" before the word "defendant" in the challenged instruction, CALJIC No. 8.81.18, to be harmless. (See

8

*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Morales* (1989) 48 Cal.3d 527, 561-562 [analogous error in instructions on torture murder special circumstance found harmless beyond a reasonable doubt].) Under the evidence and instructions as a whole, there is no reasonable doubt that the jury would still have found that appellant acted with the intent to inflict extreme pain required for the torture murder special circumstance, even in the absence of the error complained of by appellant.

III. *DISPOSITION*

The judgment of conviction is affirmed. The request for judicial notice is granted.

We concur. JONES, P.J., and GEMELLO, J.

Cal.App. 1 Dist.,2006.
People v. Cooper
Not Reported in Cal.Rptr.3d, 2006 WL 2988947 (Cal.App. 1 Dist.)
Not Officially Published
(Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)

**PROOF OF SERVICE BY MAIL**

I, the undersigned, declare:

I am a resident of the City and County of San Francisco, State of California, over the age of eighteen years, and not a party to the within action. My business address is 595 Market Street, Suite 1350, San Francisco, CA 94105-2825. On May 6, 2008, I served the within PETITION FOR WRIT OF HABEAS CORPUS on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Post Office mail box, addressed as follows:

Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-3664

I declare under penalty of perjury that the foregoing is true and correct.

Executed May 6, 2008 at San Francisco, California.


David McNeil Morse