*E-Filed 11/8/11*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

DAVID COOPER,

        Petitioner,

  v.

ANTHONY HEDGPETH, Warden, Kern Valley State Prison,

        Respondent.
_____/

No. C 08-02335 RS

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## I. INTRODUCTION

This is a federal habeas corpus action filed by a represented state prisoner pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is DENIED.

## II. FACTUAL BACKGROUND

In April 2004, a San Francisco County Superior Court jury found Petitioner David Cooper guilty of first degree murder, with a special circumstance of torture, pursuant to California Penal Code § 190.2, subdivision (a)(18). In the same trial, Cooper was separately convicted of the crime of torture under California Penal Code § 206. Based on these findings of guilt, Cooper was sentenced to a term of life in prison without the possibility of parole. He subsequently sought, and

was denied, relief on direct and collateral state review of his claims. This federal habeas action followed.

Evidence presented at trial demonstrated that petitioner murdered Michelle Breault at the Stanford Hotel on the evening of July 16, 2001.[1] On that night, Breault knocked on the door of Cooper's room which he shared with his girlfriend, Debra Soler. At the time Breault arrived, Soler's friend, Belinda German, was also in the room. Cooper was immediately suspicious of Breault and demanded that she present him with identification and prove that she did not work for the police. Despite Breault's efforts to pacify Cooper, he remained skeptical and became increasingly angry at her. In response, Breault hit Cooper on the head with a glass and Cooper pushed her away. Soler then began beating Breault with her fists and a hammer. At some point during this fight, Cooper and German attempted to prevent Soler from placing a plastic bag around Breault head. As the violence escalated, German left the room. Five minutes later, she saw Cooper in the hallway with blood on his hands. During this interaction, he told German that due to his third strike, "we're going to have to kill her now." Soon after, German returned to Soler's room and saw something on the floor wrapped in a blanket. She left and went to get something to eat, but stopped by Breault's room later where she saw Breault's body inside. The body was determined to have suffered multiple blunt and sharp trauma consistent with blows from a hammer and stab wounds in the abdomen. After German told the police what she knew about the murder, they obtained a search warrant for Soler's room and found blood splatter, a hammer, knives, a dagger, and two items from Breault's room. DNA testing matched the traces of blood in the room and on the weapons to Breault.

At trial, Cooper testified asserting that co-defendant Soler was responsible for the murder. Although he insisted that he did not participate in the actual killing, he admitted to helping Soler move the body to Breault's room. Soler, conversely, claimed in her testimony that Cooper killed Breault while she hid in the bathroom. Soler maintained that Cooper told her he had killed Breault and that she had only helped in cleaning up the blood. Soler and Cooper were jointly tried and

---

[1] For purposes of his writ, petitioner does not dispute the facts presented here.

NO. C 08-02335 RS
ORDER

2

convicted of Breault's murder. As grounds for federal habeas relief, petitioner alleges that the trial court's instruction on the torture murder special circumstance allegation deprived him of his federal constitutional rights to due process and a fair trial.

### III. LEGAL STANDARD

#### A. Federal Habeas Review

This court may entertain a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

#### B. Erroneous Jury Instructions

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings. *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). *See, e.g., Stanton v. Benzler*, 146 F.3d 726, 728 (9th Cir. 1998) (state law determination that arsenic trioxide is a poison as a matter of law, not element of crime for jury determination, not open to challenge on federal habeas review); *Walker v. Endell*, 850 F.2d 470, 475-76 (9th Cir. 1987) (failure to define recklessness at most error of state law where recklessness relevant to negate duress defense and government not required to bear burden of proof of duress). Nor does the fact that a jury instruction was inadequate by Ninth Circuit direct appeal standards mean that a petitioner who relies on such an inadequacy will be entitled to habeas corpus relief from a state court conviction. *See Duckett v. Godinez*, 67 F.3d 734, 744 (9th Cir. 1995) (citing *Estelle,* 502 U.S. at 71-72).

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle*, 502 U.S. at 72; *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].'"). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *See Estelle*, 502 U.S. at 72. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)); *Prantil v. California*, 843 F.2d 314, 317 (9th Cir.1988); *see, e.g., Middleton v. McNeil*, 541 U.S. 433, 434-35 (2004) (per curiam) (no reasonable likelihood that jury misled by single contrary instruction on imperfect self-defense defining "imminent peril" where three other instructions correctly stated the law); *Mayfield v. Woodford*, 270 F.3d 915, 922-24 (9th Cir. 2001) (no error where court allowed the jury to consider "such guilt phase instructions as it found applicable" for the penalty phase because when viewed as a whole the instructions required the jurors to consider all relevant mitigating evidence for the penalty phase); *cf. Chambers v. McDaniel*, 549 F.3d 1191, 1199-00 (9th Cir. 2008) (finding constitutional error where,

in addition to erroneous instruction on premeditation, murder instructions as a whole and state's emphasis on erroneous instruction in closing argument allowed jury to convict petitioner of first-degree murder without finding separately all elements of the crime).  Finally, the defined category of infractions that violate fundamental fairness is very narrow: "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Estelle*, 502 U.S. at 73.

IV.  DISCUSSION

Petitioner bases his writ of habeas corpus on the sole contention that the provided jury instruction relating to the torture murder special circumstance was prejudicially erroneous. California Penal Code § 190.2, subdivision (a)(18), provides for a punishment of death or life without the possibility of parole if a defendant is convicted of first degree murder and the murder is determined to have been "intentional and involved the infliction of torture." Cal. Pen. Code § 190.2 (a)(18).  To be convicted under this statute, "it must be proved that 'the defendant intended to . . . torture the victim.'" *People v. Wilson*, 44 Cal. 4th 758, 804 (2008) (quoting *People v. Davenport*, 41 Cal. 3d 247, 271 (1985)).

At petitioner's trial in 2004, the Court instructed the jury on the torture murder special circumstance with the then standard instruction, CALJIC No. 8.81.18:

> To find that the special circumstance, referred to in these instructions [as] murder involving infliction of torture to be true, each of the following facts must be proved beyond a reasonable doubt:
> One, that the murder was intentional;
> And two, *a* defendant intended to inflict extreme, cruel physical pain and suffering upon a living human being for the purpose of revenge or persuasion or for any sadistic purpose.  Awareness of pain by the deceased is not a necessary element of torture.

(Ex. 2, Vol. 15, at 2718).  Cooper challenges this instruction, arguing that, because he was tried jointly with Soler, the use of the article "a" before the word defendant prejudicially confused the jury.  He claims that the word "the" should have been used instead, to insure that the jury found that it was Cooper, not his co-defendant, who personally harbored the specific intent to torture.

Cooper's objection is founded in sound California law.  Numerous California courts have held that it was "technically erroneous" to give an instruction for torture murder similar to that provided at petitioner's trial. *See, e.g.*, *Wilson*, 44 Cal. 4th at 804 (2008) (determining that the improper torture murder jury instructions which substituted "a" for "the" constituted harmless error); *People v. Petznick*, 114 Cal. App. 4th 663, 686 (2003) (reversing conviction on appeal because the "use of the indefinite article [as it related to the intent element of torture murder] was emphasized both orally and in writing"). Furthermore, in 2005, after petitioner's trial, CALJIC No. 8.81.18 was revised to eliminate the word "a" before the word "defendant."  The revised instruction now calls for the jury to determine that: "*The* defendant intended to inflict extreme cruel physical pain." CALJIC No. 8.81.18 (2005 revised) (emphasis added). The fact that a single instruction at Cooper's trial was erroneous, however, does not necessarily establish a due process violation. *See Middleton v. McNeil*, 541 U.S. 433, 437 (2004). Rather, the crucial inquiry is whether the error "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72. To make this determination, reviewing courts must assess the misinstruction "in context with [all] other instructions, in order to determine if there was a reasonable likelihood the jury applied the challenged instruction in an impermissible manner." *Wilson*, 44 Cal. 4th at 803-04.  In this case, such a determination entails the consideration of whether "beyond a reasonable doubt, the jury would have found [that Cooper had] an intent to inflict cruel pain . . . absent the instructional error." *People v. Morales*, 48 Cal. 3d 527, 562 (1989) (holding that an error in the torture murder instructions could be cured by the other jury instructions provided at trial) *disapproved on other grounds by People v. Williams*, 111 Cal. Rptr. 3d 589 (2010).

Cooper contends that, even considering the other jury instructions, there is no evidence the jury found that he, and not co-defendant Soler, had the requisite intent to inflict cruel pain. Furthermore, he insists that the jury was likely confused about the requisite mental state required for a torture murder conviction because it was also instructed on aiding and abetting at the trial, which entails a lower mens rea standard. Petitioner's argument fails, however, for the following reasons: First, an aider and abettor does not necessarily have a "less culpable" mental state than a perpetrator.

*People v. McCoy*, 25 Cal. 4th 111, 1117 (2001). Rather, with specific intent crimes such as torture murder, "an aider and abettor's mental state must be at least that required of the direct perpetrator." *Id.* at 1117-18. Second, the completed verdict form demonstrates that the jury plainly concluded Cooper was a principal actor in the murder. On the torture murder portion of the form, the jury explicitly deemed Cooper guilty, finding that "the murder of Michelle Breault was committed by David Cooper, and that the murder was intentional and involved the infliction of torture."

Lastly, regardless of the aider and abettor instructions, there is compelling evidence the jury separately determined that Cooper had the requisite "intent to inflict cruel pain." In addition to finding Cooper guilty of torture murder under § 190.2, the jury found him guilty of the independent crime of torture under § 206. For this charge, the jury was correctly instructed that to convict petitioner of the crime of torture, it must conclude that he acted with "the specific intent to cause cruel or extreme pain and suffering." The specific intent required under § 206 is the same as that required for a torture murder conviction. *See People v. Elliot*, 37 Cal. 4th 453, 479 (2005) ("The crime of torture therefore incorporates the same intent element deemed necessary to demonstrate an 'infliction of torture' under section 190.2, subdivision (a)(18)."). It follows from the jury's determination that Cooper had the requisite mental state to be convicted under § 206, that it believed him to have the necessary intent under § 190.2 as well. In view of the whole record, there is sufficient evidence to conclude that the erroneous torture murder instruction did not amount to a due process violation. Rather, it constituted at most harmless error and does not warrant the reversal of petitioner's conviction.

## V. CONCLUSION

The state court's adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S.

473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals. The Clerk shall enter judgment in favor of respondent and close the file.

IT IS SO ORDERED.

Dated: 11/8/11

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE